COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX                                                      SUPERIOR COURT
                                                               CIVIL ACTION NO. 2218CV

MARK BELIVEAU                        )
                                     )
    Plaintiff                        )
v.                                   )         COMPLAINT
                                     )
TEMPUR RETAIL STORES, LLC            )
                                     )
    Defendant                        )

1. Plaintiff Mark Beliveau resides in Winchester MA.

2. Defendant Tempur Retail Stores LLC is headquartered in Lexington Kentucky and operates Tempur-Pedic retail stores in Natick and Burlington, MA.

3. Plaintiff was hired in June 2016 as the Manager of the Tempur-Pedic Natick retail store.

4. Plaintiff was diagnosed with neuroendocrine cancer in August 2016.

5. Plaintiff went on a paid leave of absence coded as "health condition of employee (HCE)" from September 25, 2017- October 30, 2017.

6. Plaintiff's regional manager, Sharon Sullivan, knew he had cancer.

7. Plaintiff objected to his manager's reference to him having a "tough year physically and mentally" in his 2017 performance evaluation.

8. Defendant removed that reference from his evaluation after he brought it to the attention of Human Resources.

9. Plaintiff was approved for short term disability ("STD") benefits in both the spring and summer of 2018.

10. The disability insurance carrier copied Defendant on its correspondence with Plaintiff.

11. While Plaintiff was on leave in 2018, his regional manager visited the store and asked other employees, "Do you think he [Plaintiff] is coming back?"

12. Plaintiff returned to work in July 2018.

13. Defendant was copied on correspondence Plaintiff received from the disability insurance carrier for his three STD claims (Sept 25-Nov. 9, 2017; April 24 – May 14, 2018; and May 31 – July 5, 2018).

14. Plaintiff's general manager and Human Resources personnel were copied on Plaintiff's STD correspondence in 2018.

15. By March 2019, Plaintiff earned his second merit increase in pay.

16. Plaintiff's manager repeatedly asked other Natick employees for updates on his health.

17. Plaintiff's manager purposefully scheduled her store visits on Monday evenings or Tuesdays when Plaintiff was not working

18. Employees regularly reported that during her monthly visit to the Natick store, Plaintiff's manager asked questions asked about him, including: "how is he doing? Is he sick at work? Does he leave early? Is he leaving the floor?"

19. On Tuesday, August 13, 2019, Plaintiff's manager met with the Assistant Manager of the Natick Store.

20. They left the store to have a private conversation and sat on a bench in the mall.

21. During the conversation outside of the store, Plaintiff's manager asked his subordinate how Plaintiff was doing – and how he was feeling.

22. The Assistant Manager did not feel comfortable with her inquiries about Plaintiff's health.

23. In January 2020, Plaintiff was placed on a performance improvement plan (PIP) based on a drop in sales and high turnover in the store in the fall of 2019.

24. Plaintiff met the goals set for him in the PIP.

25. Plaintiff earned another merit increase in March 2020.

26. Defendant closed its Natick store due to COVID-19 in March 2020 and reopened it on June 18, 2020.

27. Plaintiff's manager asked him in June 2020 if he was comfortable coming back to work given his "condition."

28. Plaintiff's manager stated, "I know I'm not supposed to ask about your health, but you have ample sick and vacation time – you should use it."

29. Plaintiff informed his manager he was participating in a clinical trial but did not anticipate needing to take time off because he could arrange his treatment on his two days off each week.

30. Plaintiff's manager commented on his health again in August 2020, and again told him he should take sick time.

31. Plaintiff avoided any discussions of his health or cancer treatment at work.

32. Plaintiff did not want to be known as "the guy with cancer" though his physical appearance changed after a 50-lb weight loss.

33. In late September 2020, Plaintiff used four paid sick days for his own illness. It was the first time he had ever done so.

34. Defendant summarily terminated Plaintiff on December 5, 2020.

35. Defendant claims it fired Plaintiff for "misconduct" in the form of customer complaints.

36. Defendant had never been notified, counseled, or disciplined for customer complaints.

37. Defendant did not address customer reviews/complaints in the January PIP, or at any other point in time in 2020.

38. Defendant documented an August 2020 verbal warning to Plaintiff based on a store employee's "missed punches" – an employee was required to take a break once he worked five hours, but did not, and the same employee violated policy by taking an extended meal break.

39. Plaintiff had received no warnings or communications from Defendant about "misconduct" in the form of customer complaints.

40. Until December 5, 2020, Defendant had never brought any concerns about "customer complaints" to Plaintiff's attention.

41. After it terminated Plaintiff, Defendant put information about customer complaints in his personnel file.

42. Plaintiff requested a copy of his personnel file after he was fired.

43. The personnel file Defendant produced in January 2021 did not have any documents reflecting any discipline or counseling regarding hostile interactions with customers.

44. Plaintiff was complimented by customers for his excellent customer service and was also complimented by Cliff Buster, Defendant's current CEO, for "outstanding" customer service. See Exhibit A.

45. Defendant's reliance on alleged misconduct or customer complaints is a pretext for discriminatory intent.

46. The Natick store's Google reviews include multiple compliments about the manager, Plaintiff, being helpful, great, patient, fantastic, etc.

47. Defendant offered significant benefits to Plaintiff in addition to his base salary.

48. Plaintiff had medical insurance, prescription drug coverage, employer paid short term disability, long term disability, and employer paid basic life insurance through Defendant.

49. Plaintiff's manager warned him that he was not eligible for any additional salary increases because he had "maxed out" the pay scale.

50. Plaintiff's cancer treatment was very expensive.

51. Plaintiff's approved health insurance claims totaled over $1.3 million in 2019.

52. Plaintiff's approved health insurance claims totaled $874,545 in 2020.

53. Defendant fired Plaintiff just weeks after his first use of paid sick time.

54. Plaintiff was entitled to take paid sick days under the Massachusetts earned sick time law.

55. On the date of his termination, Plaintiff was just a few weeks away from being eligible for yet another benefit - paid sick leave.

56. Plaintiff would have been eligible for paid sick leave under the Massachusetts Paid Family Medical Leave Act as of January 1, 2021.

57. Defendant knew that given his cancer diagnosis, treatment and enrollment in a clinical trial, Plaintiff would likely continue to have high insurance claims.

58. High insurance usage by employees is associated with increased insurance premiums charged to employers.

59. Defendant documented Plaintiff's medical leaves for cancer treatment and terminated him within weeks of his first use of paid sick days when he was suffering from the effects of treatment for his cancer.

60. Plaintiff was 60 years old when he was fired.

61. Plaintiff was the second-longest tenured retail store manager in the company when he was fired.

62. Plaintiff planned work for Defendant until his retirement.

63. Defendant replaced Plaintiff as store manager with another employee who was in his 30s and substantially younger than Plaintiff.

64. Plaintiff filed an action against Defendant at the Massachusetts Commission Against Discrimination in 2021 and withdrew that claim to pursue this action.

## COUNT I – HANDICAP DISCRIMINATION - MGL 151B, §4(16)

65. Plaintiff restates and realleges the facts set forth in Paragraphs 1-64 as if set forth fully herein.

66. Plaintiff's cancer is handicap.

67. Plaintiff was able to perform the essential functions of his position and was performing at an acceptable level.

68. Defendant fired Plaintiff because of his handicap.

69. Defendant replaced Plaintiff with an employee who does not have a handicap.

70. Plaintiff has suffered damages and will continue to suffer damages resulting from Defendant's unlawful discrimination.

## COUNT II – AGE DISCRIMINATION -MGL 151B, §4(1B)

71. Plaintiff restates and realleges the facts set forth in Paragraphs 1-70 as if set forth fully herein.

72. Plaintiff was over 40 years of age at the time he was terminated.

73. Plaintiff was qualified to perform the position of Manager.

74. Plaintiff was performing at an acceptable level.

75. Plaintiff was terminated and replaced by someone who was substantially younger.

76. Plaintiff has suffered and will continue to suffer damages as the result of Defendant's unlawful discrimination.

WHEREFORE, Plaintiff respectfully requests the following relief:

a. Entry of judgment in his favor and award damages in an amount to be proven at trial under Counts I-II; award punitive damages and attorney's fees and costs under MGL c. 151B, Section 9 on Counts I-II.

b. Award such other relief as the Court deems appropriate.

Plaintiff seeks a jury trial on all claims.

PLAINTIFF
MARK BELIVEAU
By his attorney,

_____
Margaret M. Pinkham (BBO #561920)
PINKHAM BUSNY LLP
42 Pleasant Street
Woburn, MA 01801
mpinkham@pinkhambusny.com
(781) 933-6840

Dated: June 9, 2022

7

# EXHIBIT A

11/9/2018                                                                         Mail - mark.beliveau@tempursealy.com

# FW: outstanding service!!

**Buster, Cliff**

Tue 10/23/2018 12:08 PM

To Beliveau, Mark <mark.beliveau@tempursealy.com>;

Cc Sullivan, Sharon <Sharon.Sullivan@Tempurpedic.com>; Colavecchia, Joe <joe.colavecchia@tempursealy.com>;

Outstanding job with this customer Mark. That is the type of customer experience that we are striving for to set us apart from the competition. Keep up the great work!

Regards,

Cliff

**From:** Sullivan, Sharon
**Sent:** Tuesday, October 23, 2018 10:59 AM
**To:** Colavecchia, Joe <joe.colavecchia@tempursealy.com>; Buster, Cliff <Cliff.Buster@tempursealy.com>

**From:** Woldeselassie, Abraham (Abraham) <woldeselassie@avaya.com>
**Sent:** Wednesday, October 17, 2018 2:02 PM
**To:** Sullivan, Sharon <Sharon.Sullivan@Tempurpedic.com>
**Subject:** outstanding service!!

Hello Sharon,
I wanted to take a few minutes to express my deep appreciation for the service I received from the manager, Mark Beliveau On October 13th 2018.
I have been in the service industry for twenty years and I have rarely if ever, encountered someone so professional and dedicated to their customers. He was professional, friendly, honest and very personable. He listened to us and our needs and set me up with exactly what we needed. He went out of his way in how he treated not only me and my wife but my kids as well. I never once got the impression he had anything else to do that day then to make sure we were well taken care of. As a result of his attention and amazing service, we ended up buying more than what I had originally intended and that's not an easy thing to do.
Not only will I share my experiences with him to the staff I coach at work as an example of what we should strive to achieve; I will share this experience with everyone considering this type of purchase. He is a great asset to your company and is deserving of all the highest praise I can give him.
Job well done, Mark! Thank you for your outstanding service!

*Abraham Woldeselassie* | Avaya | Technical Support Senior Engineer | GSS - Global Support Services | *1-978-671-3189* | woldeselassie@avaya.com | Office Hours: Monday - Friday 9 am to 6 pm EST

**Quick Links**      Product Documentation | Support Dashboard | Security Advisory Information | Compatibility Matrix |
**Tech Links**


