UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA A. BASSETT, Personal Representative of the Estate of Mark Beliveau,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR RETAIL STORES, LLC,<br><br>Defendant. | Civil Action No. 22-cv-11127-NMG |
| MELISSA A. BASSETT, Personal Representative of the Estate of Mark Beliveau,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR RETAIL STORES, LLC, et al.,<br><br>Defendants. | Civil Action No. 22-cv-12883-NMG |

ORDER ON DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AS TO BUSTER'S DEPOSITION
[Docket No. 103]

July 15, 2024

Boal, M.J.

Plaintiff Melissa A. Bassett, as Personal Representative of the Estate of Mark Beliveau, asserts handicap and age discrimination in violation of state law, as well as ERISA violations. The defendants are Beliveau's former employer Tempur Retail Stores, LLC, Tempur Pedic Management, LLC and Tempur Sealy International, Inc. (collectively, "Tempur"). Tempur has moved for a protective order pursuant to Fed. R. Civ. P. 26(c) prohibiting Bassett from deposing

Tempur International's Chief Executive Officer, Hugh Clifford Buster III. Docket No. 103. For the following reasons, this Court grants the motion.[1]

I.      PROCEDURAL BACKGROUND

Beliveau filed this action on July 13, 2022. Docket No. 1. Bassett's motion to substitute for her husband Beliveau was granted on November 10, 2022. Docket No. 19. This Court consolidated Civil Action No. 22-11127-NMG and Civil Action No. 23-12883-NMG on Feb. 13, 2024. Docket No. 82.

In 2016, Beliveau was hired as the manager of Tempur's Natick retail store. Complaint at ¶ 3. He was diagnosed with neuroendocrine cancer in August 2016. Id. at ¶ 4. He was terminated on December 5, 2020. Id. at ¶ 34. Tempur claims it fired Beliveau as a result of customer complaints. Id. at ¶ 35.

Bassett alleges that Tempur's stated reason for Beliveau's termination was pretextual and that Beliveau was actually terminated because of a disability (i.e., cancer) and his age. See generally id. at ¶¶ 65-76. The Complaint alleges that Beliveau's cancer treatment was very expensive and his health insurance claims totaled over $1.3 million in 2019 and $874,545 in 2020. Id. at ¶¶ 50-53. It also alleges that Tempur knew that, given his cancer diagnosis, treatment, and enrollment in a clinical trial, Beliveau would likely continue to have high insurance claims. Id. at ¶ 57. Such high insurance usage by employees allegedly is associated with increased insurance premiums to employers. Id. at ¶ 58.

Bassett also alleges that Tempur terminated Beliveau for his past exercise of rights and using benefits and to interfere with the future exercise of his rights under Tempur's welfare benefit plans. See ERISA Action Complaint at ¶¶ 95-97; 101. In addition to Tempur, she has

---

[1] On June 17, 2024, Judge Gorton referred the motion to the undersigned. Docket No. 112.

2

named as defendants Tempur-Pedic Management, LLC, and Tempur Sealy International. Id. at ¶¶ 3-5. The complaint asserts two causes of action: ERISA retaliation and interference with ERISA rights. Id. at ¶¶ 92-102.

On June 12, 2024, Tempur filed the instant motion seeking a protective order prohibiting Bassett from deposing Buster. Docket No. 103. On June 26, 2024, Bassett filed an opposition, to which Tempur filed a reply. Docket Nos. 124, 129. This court heard oral arguments on July 11, 2024. Docket No. 113.

II.   ANALYSIS

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit."  Id.

In general, "[a] party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court . . ." Fed. R. Civ. P. 30. Rule 26(c) of the Federal Rules of Civil Procedure limits this generally broad access to witnesses during the discovery process. Fed. R. Civ. P. 26(c) (providing for the issuance of a protective order to avoid

"undue burden" on the deponent). Although courts are loath to preclude parties from deposing prospective witnesses, special considerations arise when a party attempts to depose high-level corporate executives. Such "[h]ighly-placed executives are not immune from discovery." Koninklijke Philips Electronics N.V. v. ZOLL Med. Corp., CIV. 10-11041-NMG, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013). Courts, however, have acknowledged that precluding or conditionally deferring the depositions of such executives may be appropriate where they lack specific and unique knowledge related to the suit. Id.; see also B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters, 285 F.R.D. 185, 186 (D.P.R. 2012) (granting protective order prohibiting deposition of executive where he filed affidavit attesting to his lack of knowledge regarding the discovery sought); Consol. Rail Corp. v. Primary Indus. Corp., Nos. 92 Civ. 4924(PNL), 92 Civ. 6313(PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (deferring executive depositions until other witnesses were deposed, but contemplating that such depositions could be conducted upon a showing that the executives had "some unique knowledge pertinent to the issues in these cases").

Where executives do have such knowledge, and where other avenues of discovery do not provide an adequate substitute, courts have denied protective orders. See Koninklijke Philips, 2013 WL 1833010 at *2 (permitting deposition of executive where discovery from corporate designee did not specifically address the relevant time period at issue, for which executive was alleged to have unique knowledge); Travelers Rental Co. v. Ford Motor Co., 116 F.R.D. 140, 142 (D. Mass. 1987) (permitting depositions of executives, including Ford president, "who approved and/or administered" the actions at issue).

Courts refer to this analysis around high-level executive depositions as the apex doctrine and stress that it is "merely a tool for guiding the Court's analysis in determining whether to limit

discovery . . . because [it] can be obtained from some other source that is more convenient, less burdensome, or less expensive [or is not proportional to the needs of the case]." See, e.g., Viscito v. Nat'l Planning Corp., No. CV 3:18-301-30132-MGM, 2020 WL 4274721, at *2 (D. Mass. July 24, 2020) (quoting United States ex rel. Galmines v. Novartis Pharms. Corp., Civil Action No. 06-3213, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20. 2015)). "A threshold question is whether the proposed deponent has unique personal knowledge related to the claim being litigated that cannot be provided by another witness." Id. at *3.

     Here, Bassett acknowledges that Buster, as Tempur International's CEO, is a high-level executive. However, she argues that because Buster had a lesser position when Beliveau worked at Tempur, Buster should receive less protection than if he were the CEO at that time. Docket No. 124 at 4-5. Bassett also argues that she must be allowed to depose Buster "because he was unequivocally in the direct line of Beliveau's chain of command" and she points to Buster's receipt of emails about Beliveau's FMLA leave in 2018. Docket No. 124 at 5, 2. That is not the standard. Rather, she must show that Buster has unique personal knowledge. To the contrary, Bassett's opposition memo names several other individuals likely to have more direct, if not overlapping knowledge of the relevant events, including Colavecchia, Sullivan, Daily, Millar, and Owens. Docket No. 124 at 1-4. At oral argument, Bassett's counsel stated that she did not know if Buster had any direct knowledge about Beliveau's termination. Accordingly, Bassett has not met her burden to show that Buster has unique personal knowledge relevant to this case.

III. <u>ORDER</u>

For the foregoing reasons, this Court grants Tempur's motion for protective order. This Court declines to award attorney's fees and costs.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge
