UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MELISSA A. BASSETT, Personal Representative of the Estate of Mark Beliveau,<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR RETAIL STORES, LLC, et. al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 22-cv-11127-NMG[1]<br>)<br>)<br>)<br>)<br>) |

ORDER ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
[Docket No. 106]

July 15, 2024

Boal, M.J.

      Defendants Tempur Retail Stores, LLC, Tempur Pedic Management, LLC and Tempur Sealy International, Inc. (collectively, "Tempur") filed a motion for a protective order prohibiting Plaintiff Melissa Bassett from deposing Attorney Leila O'Carra, Tempur's in-house legal counsel. Docket No. 106.[2] For the following reasons, I grant Tempur's motion for a protective order.[3]

---

[1] On February 14, 2024, this Court granted Plaintiff's motion to consolidate Civil Action No. 22-cv-11127-NMG (the "Discrimination Action") with Civil Action No. 23-cv-12883-NMG (the "ERISA Action") for pretrial purposes, including discovery and dispositive motions. Docket No. 82.

[2] Tempur also requests that they be awarded attorney's fees and costs in connection with the motion pursuant to 28 U.S.C. §1927. Docket No. 106. Upon consideration of all the circumstances, this Court declines to award attorney's fees and costs.

[3] On June 17, 2024, Judge Gorton referred the motion to the undersigned. Docket No. 112.

1

I.     BACKGROUND

Mark Beliveau was the store manager at Tempur Retail Stores, LLC's Natick location from June 2016 to December 2020. Discrimination Action Complaint at ¶¶ 3, 34. Bassett alleges that Beliveau was terminated for reasons relating to his disability (i.e., cancer) and age in violation of state law. See generally id. at ¶¶ 65-76. She also alleges that Beliveau was terminated in retaliation for using ERISA-protected benefits and in order to interfere with his right to use those benefits in the future. ERISA Action Complaint at ¶¶ 96, 101.

Attorney O'Carra serves as Tempur's Employment Counsel. She provides legal advice regarding employment matters. Docket No. 107 at 2. Bassett alleges that Attorney O'Carra was involved in Beliveau's separation agreement and the communications surrounding his termination. Docket No. 124 at 6. Furthermore, on January 30, 2024, Misty Daily, Director of Human Resources, testified that she was unable to recall the dates of her communications surrounding Beliveau's termination. Id. Based on these events, Bassett argues that she is entitled to Attorney O'Carra's deposition. Tempur filed a motion for a protective order on June 12, 2024. Docket No. 106. On June 26, 2024, Bassett filed an opposition, to which Tempur filed a reply. Docket Nos. 124, 129. This Court heard oral argument on July 11, 2024.

II.    DISCUSSION

A. Standard of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211

F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1). Factors that must be considered in weighing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Information within the scope of discovery need not be admissible in evidence to be discoverable. Id.

Courts may also issue protective orders when appropriate. Specifically, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c)(1). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### B. Tempur Is Entitled To A Protective Order Barring The Deposition of Attorney O'Carra

Bassett seeks to take the deposition of Attorney O'Carra. Any time a deposition notice names an opposing party's counsel as the deponent, red flags go up. Although the Federal Rules of Civil Procedure do not specifically prohibit the deposition of a party's counsel, depositions of opposing counsel are generally disfavored. See, e.g., Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003). Federal courts have noted a number of concerns that depositions of an opposing party's counsel pose. First, "[a]llowing depositions of opposing counsel, even if those depositions were limited to relevant and non-privileged information, may disrupt the

3

effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co., 276 F.R.D. 376, 380-81 (D.D.C. 2011) (citations omitted; collecting cases). In addition, "depositions of opposing counsel present a 'unique opportunity for harassment.'" Id. at 381. Another concern is that "counsel depositions carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy." Id. at 382.

In deciding whether the deposition of opposing counsel is appropriate, courts often use the test adopted by the Eighth Circuit in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). See Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208, 210 (D.P.R. 1998). Under that test, depositions of opposing counsel should be limited to "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information [other] than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton, 805 F.2d at 1327 (citation omitted). The crucial factor in determining whether the Shelton test applies is the extent of the lawyer's involvement in the pending litigation. Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co., No. A-09-CA-711-LY, 2010 WL 5174366, at *3 (W.D. Tex. Dec. 13, 2010).[4]

"Defining the scope of ... privilege for in-house counsel is complicated by the fact that these attorneys frequently have multi-faceted duties that go beyond traditional tasks performed

---

[4] The First Circuit has not explicitly adopted the Shelton test. However, it has used a similar test in deciding whether opposing counsel may be compelled to testify at trial. See Bogosian, 323 F.3d at 66. Under that test, the factors to be considered include: "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, non-privileged, and crucial to the moving party's case." Id. (citations omitted). While Bogosian dealt with trial testimony, these factors are also relevant to the depositions of trial counsel. See Confederate Motors, Inc. v. Terny, No. 11-10213-JGD, 2012 WL 612506, at *1 (D. Mass. Feb. 24, 2012)

4

by lawyers." U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994); see City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 9 (D. Mass. 2000). The attorney-client privilege does not apply when in-house counsel is engaged in "nonlegal work" such as "the rendering of business or technical advice unrelated to any legal issues." United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citation omitted). However, "so long as the communication is primarily or predominantly of a legal character, the privilege is not merely lost by reason of the fact that it also dealt with nonlegal matters." Id. (citing City of Springfield, 196 F.R.D. at 9).

Bassett claims that Attorney O'Carra played a role in the termination process and has relevant knowledge regarding the timing of oral communications about Beliveau, including at least in 2018 and 2020. Docket No. 124 at 6. However, Bassett has provided little to substantiate her assertion, particularly to show that Attorney O'Carra possesses non-privileged information. It is unsurprising, given her role as Employment Counsel, that Attorney O'Carra was involved in the termination of an employee. Deposing Attorney O'Carra for information regarding personnel and benefits may implicate the attorney-client privilege and/or work product doctrine. Although otherwise non-privileged documents do not become privileged because they were given to counsel, testimony regarding those documents and their exchange may implicate strategy or the mental impressions of the lawyer.

Accordingly, Bassett has not shown that she should be allowed to take the deposition of Attorney O'Carra, and therefore, I grant Tempur's request for a protective order.

III.     ORDER

For the foregoing reasons, I grant Tempur's motion for a protective order.

/s/ Jennifer C. Boal  
JENNIFER C. BOAL  
United States Magistrate Judge